UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

IN RE:         NATHAN DANIEL SCHWARTZ     :        Chapter 13
                                          :
               Debtor(s)                  :        Bky. No. 10-13665 ELF

# O R D E R

**AND NOW**, the Debtor having commenced this chapter 13 bankruptcy case on **May 4, 2010**;

**AND**, Stephanie Brubaker Schwartz ("the Movant"), the Debtor's former spouse, having filed a Motion for Relief from the Automatic Stay ("the Motion") (Doc. # 8) on **May 11, 2010**, seeing relief for "cause" under 11 U.S.C. §362(d)(1);

**AND**, a hearing on the Motion having been held and concluded on **June 3, 2010**;

\*   \*   \*   \*

**AND**, in December 2008, the Movant and the Debtor having entered into a Marital Settlement Agreement ("the MSA") (Ex. 1) pursuant to which the parties agreed that, inter alia:

- A. the Movant would convey to the Debtor her interest in the marital residence, 208 Rebecca Court, Chalfont, PA ("the Property") with the deed ("the Deed") held in escrow pending the Debtor's performance of certain obligations (the material ones being described below);

- B. the Debtor would pay the Movant $60,000.00, one-half of which was to be paid within thirty (30) days of the execution of the MSA,

- C. the balance of the $60,000.00 to be paid within ninety (90) days of the execution of the MSA at the closing of a refinancing transaction ("the Refinancing") in which the Movant would be released from all liability on two (2) notes ("the Notes") which are secured by mortgages on the Property ("the Movant's Release");

-1-

    D. upon failure of the Debtor to effect the Refinancing, the Property would be listed for sale with the Movant receiving the balance due on the $60,000.00 payment before the remaining net sale proceeds are distributed to the Debtor;

**AND**, subsequently, the deadline for the consummation of the Refinancing having been extended by agreement of the parties on **March 6, 2009** and **March 2, 2010** respectively in settlement of two (2) petitions for contempt filed by the Movant in Schwartz v. Schwartz, No. A06-07-60915-Q-32 (C.P. Bucks) (see Exs. 2, 3);

**AND**, as part of the **March 2, 2010** settlement, the parties having agreed, inter alia:

    A. upon the retention of a specific realtor and the terms of a listing agreement for the Property;

    B. that the terms of the listing agreement would include an "exclusion," providing that if the Debtor is able to refinance, then the house would come off the market and the realtor would not be entitled to a commission;

    C. that if the Debtor "should interfere or deny any buyer or prospective buyer or realtor access to the home on any occasion from now going forward . . . he will be ordered to vacate [the Property] and [the Movant] will be give exclusive possession of [the Property] . . . ."

**AND**, on **April 23, 2010**, the Movant having filed a third petition for contempt based on allegations that the Debtor obstructed efforts to market the Property for sale ("the Contempt Petition");

**AND**, in the Contempt Petition, the Movant having requested inter alia, that she be granted exclusive possession of the Property and other relief designed to give her control of the marketing and sale of the Property;

**AND**, the Contempt Petition having been scheduled for a hearing on **May 26, 2010**;

**AND**, on **May 3, 2010**, the Movant having filed a request for an expedited hearing on the Contempt Petition;

**AND**, the Debtor having filed this bankruptcy case the next day, **May 4, 2010**, staying all proceedings in connection with the Contempt Petition;[1]

\* \* \* \*

**AND**, the Debtor having filed a proposed chapter 13 plan ("the Plan") in this court on **June 2, 2010**;

**AND**, the Plan proposing to cure the existing mortgage arrearage on the Property through sixty (60) months of plan payments to the Chapter 13 Trustee;[2]

**AND**, the Plan not addressing the Debtor's obligations to the Movant under the MSA;

**AND**, at the **June 3, 2010** hearing, the Debtor having represented that he is prepared to file an amended chapter 13 plan that would address his obligations to the Movant under the MSA as follows:

> A. the Debtor would have a limited period of time (90-180 days) in which to complete a forbearance agreement with the holder of the two (2) mortgages on the Property pursuant to which (1) the prepetition delinquency would be deferred and the default waived and (2) <u>the mortgagee would release the Movant from her obligations under the Notes</u>; and

---

[1] The May 26, 2010 hearing was rescheduled to June 28, 2010. See generally <u>Taylor v. Slick</u>, 178 F.3d 698 (3d Cir. 1999) (continuance of a sheriff's sale in accordance with state law procedure during the pendency of an automatic stay does not violate automatic stay).

[2] The Plan states that the prepetition delinquency due the mortgagee is $20,000.00. The mortgagee has not yet filed a proof of claim. There are two (2) mortgages on the property held by the same mortgagee. The record is not clear whether just one (1) or both of the mortgages were delinquent when the bankruptcy case was filed.

    B. if the forbearance was not accomplished by the deadline, the Debtor and the Movant would proceed with a sale of the Property in accordance with the MSA, as modified by the agreements settling the two (2) contempt petitions;[3]

\* \* \* \*

**AND**, 11 U.S.C. §362(d)(1), providing that the bankruptcy court shall terminate, modify, condition, or annul the automatic stay for "cause;"

**AND**, there being cause for a modification of the automatic stay if the circumstances suggest that it is "more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere;" In re Wilson, 116 F.3d 87, 91 (3d Cir. 1997) (quoting S. Rep. No. 95-989, at 50

---

[3] At the June 3, 2010 hearing, the Debtor produced evidence that he entered into a "trial forbearance" with the mortgagee in December 2009 pursuant to which he was obliged to make certain payments from February 2010 to April 2010. (See Ex. 6). He also offered into evidence a draft forbearance agreement. The draft forbearance does not expressly reference a release of the Movant from liability under the Notes. However, because it purports to forbear as to the Debtor only (and not the co-mortgager, i.e., the Movant), the putative agreement may contemplate the recordation of the Deed and Movant's Release as part of the transaction.

    The Debtor represented that he paid the "trial forbearance" payments in a timely manner. As a result, he is optimistic that he can obtain the final forbearance and release of the Movant that his unfiled amended plan contemplates in the near future. He could not explain why the agreement was not finalized in the two (2) month period between his April 2010 payment and the June 3, 2010 hearing, except to suggest that his mortgagee is slow and inefficient in administering the large number of mortgage modification transactions that are being considered at this time.

    I also note that the forbearance/release arrangement envisioned by the Debtor does not address the monetary obligation to pay the Movant the $60,000.00 contemplated by the MSA. At the hearing, the parties agreed that, prior to the bankruptcy filing, the Debtor already had paid $30,000.00 of the $60,000.00 obligation. The Debtor represented that the necessary funds to complete the payment obligation had been tendered previously to the Movant who refused to accept the balance due because it was not accompanied by the Movant's Release. The Debtor also represented that close family members are the source of payment and therefore, the tendered funds, which are still available, are not property of the bankruptcy estate.

(1978));

**AND**, bankruptcy courts traditionally being reluctant to resolve family law matters except to the extent necessary to administer the bankruptcy case, see generally In re Greene, 1999 WL 138905, at *8 (Bankr. E.D. Pa. Mar. 5, 1999) , aff'd, 1999 WL 689711 (E.D. Pa. Sept. 7, 1999);

**AND**, bankruptcy court deferral to the superior expertise of the state court in family court matters being especially appropriate if the parties's dispute involves sensitive family law issues;[4] see, e.g., In re Moses, 194 B.R. 777 (Bankr. E.D. Pa. 1996);

**AND**, the determination whether cause exists for the grant of relief under §362(d)(1) being committed to the discretion of the bankruptcy court, see, e.g., In re Szymanski, 413 B.R. 232, 253 (Bankr. E.D. Pa. 2009); accord Matter of Holtkamp, 669 F.2d 505 (7th Cir.1982);

*　*　*　*

**AND**, the Debtor's proposed (unfiled) amended chapter 13 plan, in effect, incorporating the parties' pre-bankruptcy agreement for treatment of the Movant's claim with one (1) exception: it modifies the prior agreements by suspending the marketing of the Property for sale for an additional, fixed period of time while the Debtor continues his efforts to obtain the Movant's Release;

**AND**, to the extent that the proposed amended chapter 13 plan does not modify the

---

[4] This dispute may implicate such s sensitive matter. In his closing argument, the Debtor's attorney represented that the Debtor has custody of the parties' children and that they have lived in the Property their entire lives. Therefore, if counsel's representation is accurate and the Movant obtains exclusive possession of the Property, the children would be compelled to move out of the only home they have known (as the Debtor's counsel put it). The impact on the children of the dispossession remedy sought by the Movant, to the extent it may be relevant in the parties' MSA dispute, is best determined by the state family court, not the federal bankruptcy court.

parties' pre-bankruptcy agreement, there being no bankruptcy-related legal issues in the judicial supervision of the agreement and therefore, it being more appropriate for the state court rather than the bankruptcy court to resolve disputes arising under the agreement;

**AND**, to the extent that the proposed amended chapter 13 plan purports to modify the parties' pre-bankruptcy agreement, such a plan perhaps being permissible under 11 U.S.C. §1322(b)(3);

**AND**, notwithstanding the possible applicability of 11 U.S.C. §1322(b)(3), it being necessary to consider the Debtor's treatment of the Movant under the proposed amended chapter 13 plan against the backdrop of the prior history between the parties and the possibility that this case and this plan was not filed in good faith, see In re Porter, 371 B.R. 739 745 (Bankr. E.D. Pa. 2007) (bad faith constitutes "cause" for relief from the automatic stay under §362(d)(1)) (collecting cases); see generally In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996) (good faith filing requirement in chapter cases); 11 U.S.C. §1325(a)(3), (7) (confirmation requirements that chapter 13 case and proposed chapter 13 plan must be filed in good faith);

**AND**, given the significance of evaluating the Debtor's prepetition conduct in connection with the prior orders of the state court (and whether such conduct was contemptuous), it being appropriate that the court that issued the orders conduct that evaluation, see, e.g., In re Ormond Beach Assoc. Ltd. Partnership, 212 B.R. 31, 33 (Bankr. D. Conn. 1997) ; In re Dennis, 218 B.R. 52, 55 (Bankr. E.D. Ark. 1997);

**AND**, it being within the discretion of the state court to consider any equitable circumstances the Debtor may present when it determines the nature and scope of any remedies to which the Movant may be entitled;

**AND**, if the allegations in the Contempt Petition are not proven, the Debtor being in an even stronger position to appeal to the equitable power of the state court to provide him with additional time to obtain the Movant's Release prior to a sale of the Property;

**AND**, in any event, considering that the next hearing in the state court action is not scheduled until **June 28, 2010**, the Debtor already having obtained an additional period of almost two (2) months (from the date of the bankruptcy filing, **May 4, 2010**, to the next state court hearing date, **June 28, 2010**) to obtain the Movant's Release;

**AND**, upon consideration of the foregoing circumstances and in the exercise of its discretion, the court concluding that cause exists to grant the Movant immediate relief from the automatic stay under 11 U.S.C. §362(d)(1);[5]

It is hereby **ORDERED** that:

1. The Motion is **GRANTED**.

2. The Movant is **GRANTED** relief from the automatic stay under 11 U.S.C. §362(d)(1) to enforce its rights under applicable nonbankruptcy law under the MSA including, but not limited to, prosecution of the Contempt Petition.

**Date:   June 11, 2010**

          **ERIC L. FRANK**
          **U.S. BANKRUPTCY JUDGE**

---

[5] To be clear, I have made no determination that the Debtor was in contempt of the March 2, 2010 state court order or otherwise has not acted in good faith in connection with this bankruptcy case. Rather, cause for relief from the automatic stay exists because it is appropriate that the Debtor's conduct be evaluated by a court and that inquiry is more appropriately conducted by the state court.